**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 30, 2026

# In the Court of Appeals of Georgia

A26A0824. STUBBS et al v. HOME DEPOT U.S.A., INC. et al.

DOYLE, Presiding Judge.

Following the amputation of portions of her fingers by her lawnmower after it stalled, Victoria and James Stubbs (collectively, the "Stubbs") sued The Toro Company ("Toro"), Kohler, Co. ("Kohler"), and Home Depot U.S.A., Inc. ("Home Depot," collectively, the "Defendants"). The trial court granted summary judgment to Home Depot, and in a separate order, it granted the Defendants' motion to exclude one of the Stubbs's expert witnesses. The Stubbs appeal, challenging the court's rulings on these two motions. For the reasons that follow, we affirm.

Viewed in the light most favorable to the nonmoving party, see *Johnson v. Terminal Inv. Corp.*, 374 Ga. App. 629, 629 (913 SE2d 14) (2025), the record shows

that on July 24, 2020, Victoria was mowing her lawn with a Toro Recycler walk-behind lawnmower, which was equipped with a Kohler XTX675 engine and had been purchased at Home Depot. The lawnmower became clogged with grass and stalled. Victoria laid the lawnmower on its side and, seeing a tuft of grass between the blade and sidewall, reached to remove the grass with her hand. Despite the lawnmower being off, Victoria heard a popping sound, and the blade rotated a half to a full rotation, severing the tips of two of her fingers. The Stubbs's expert hypothesized that the lack of oil changes in an engine that requires them regularly resulted in an inadvertent combustion event, a recognized risk in the industry, that rotated the blade, causing the amputation.

The Stubbs sued Toro, Kohler, and Home Depot, asserting product liability claims against Toro and Kohler, a claim of breach of the implied warranty of merchantability against Home Depot, and claims of fraud, negligent misrepresentation, violations of the Fair Business Practices Act, OCGA § 10-1-393 et seq. ("FBPA"), and loss of consortium on behalf of James against the Defendants, seeking attorney fees under OCGA § 13-6-11 and punitive damages.

Victoria deposed that she and her husband selected the lawnmower for purchase based on information presented on its in-store display model, box, point-of-sale placard, and Home Depot's website.[1] The lawnmower's display model, box, and point-of-sale placard represented that the lawnmower was one for which there was "no oil change needed." Victoria deposed that this representation was a factor in their selection of the lawnmower. She recalled that those statements were on the "spec sheet … under the display mowers. I believe it was on there, as well as on the box." By spec sheet, Victoria was referring to the point-of-sale placard that is designed by Home Depot with its brand colors and displayed by the Home Depot protection plan advertisement and ratings of the item in Home Depot colors. Home Depot worked with Toro to design and complete the substantive data of the placard, which included "no oil changes required for life of the mower."

In addition to selling the Toro Recycler, Home Depot is an authorized Toro service dealer and is required to understand proper service and maintenance

---

[1] Victoria's mother-in-law deposed that she purchased the lawnmower from Home Depot for Victoria and James in the summer of 2018, which Home Depot conceded for the purposes of the summary judgment motion.

requirements for the mower and the engine. Toro met with Home Depot representatives in 2015 and discussed the XTX675 engine.

After the purchase, the Stubbs used the lawnmower every two or three weeks without incident until July 2020. James deposed that he regularly added oil to the engine during this period, but based on the representation that no oil change was needed, he never performed a full oil change.

Representatives from Kohler deposed that the XTX675 was introduced in 2016, and the record reflects that it is essentially the same design as Kohler's XT engine, which requires regular oil changes as well as decarbonization every year or 100 hours. Oil changes and decarbonization are typical requirements for walk-behind power lawnmower engines from the same period. Kohler deposed that if an engine is properly maintained, then the combustion chamber will be clean without particles or carbon, the accumulation of which can otherwise lead to oil saturation, resulting in a lower combustion or ignition point. Lower ignition points can result in "inadvertent combustion" events within an engine.

The Stubbs designated two expert witnesses in the fields of engine and machine mechanics, operation, and maintenance: Frank Alfano and William Wilson, but this

appeal is concerned only with Alfano. Alfano is a certified master mechanic for all automotive vehicles. He holds the position of ECS Technical Specialist at Stellantis, where he assists in diagnosing and repairing vehicles, and is a master consultant for all vehicle commodities. As a result of his profession, he has worked with engines for over 43 years, and he applied his professional knowledge of the complex internal combustion engines contained in automobiles to the XTX675, which is a small single-cylinder internal combustion engine. Additionally, Alfano has worked for about 28 years as a forensic investigator of automobiles, generators, and tractors to determine causes and origins of fires, among other things.

Alfano occasionally has worked on lawnmowers brought in from the car lot, has torn down several Kohler engines, which he owns as personal outdoor power equipment, and has rebuilt Briggs & Stratton (another lawnmower brand) engines. Moreover, his personal hobby is working on small plane engines, including multiple to single cylinder engines.

Alfano reviewed written discovery, depositions, photographs of the lawnmower and Victoria's injury, the operator's manuals for the lawnmower and the service manuals for engines similar to the XTX675, an article on internal combustion engines,

and two Kohler patents relating to the lawnmower's brake system and automatic compression release mechanism. Alfano also inspected and tested the Stubbs's lawnmower, an exemplar Toro Recycler lawnmower, two earlier model Toro Recycler lawnmowers, and an unspecified number of non-Toro lawnmowers.

Although the testing and investigation conducted on the XTX675 did not result in a duplication of the event described by Victoria, Alfano concluded that the lawnmower underwent an "unintended ignition event" causing the blade to rotate prior to her injury. Alfano opined that the occurrence of such an event was "probable," assuming that "[e]verything … line[d] up perfectly — the amount of fuel that was in the cylinder, the amount of air, the type of fuel, the engine temperature, the amount of carbon in the combustion chamber, and the amount of heat saturation time." Alfano opined that not changing the engine oil had led to the formation of carbon deposits in the combustion chamber, which caused an unintended ignition event that rotated the blade after the lawnmower had shut down. Alfano deposed that the lawnmower's primary design defect is "the lack of oil change[,]" which causes "excessive oil to be consumed by the engine, resulting in carbon buildup."

Home Depot moved for summary judgment,[2] and it joined Toro's motion to exclude the testimony of Alfano pursuant to OCGA § 24-7-702. After a hearing, the trial court entered separate orders granting Home Depot's motion for summary judgment and granting the Defendants' motion to exclude Alfano's expert testimony. The Stubbs now appeal.

1. The Stubbs argue that the trial court abused its discretion by granting the Defendants' motion to exclude expert Alfano in light of his extensive knowledge and experience repairing internal combustion engines.[3] We disagree.

"[T]he issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the trial court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion." *Johnson*, 374 Ga. App. at 632-33(1) (quotation marks omitted).

---

[2] Toro and Kohler filed motions for summary judgment on the Stubbs's product liability claims against them, which motions remain pending below.

[3] The Stubbs have not challenged the trial court's exclusion of their second expert witness.

Georgia courts look to *Daubert v. Merrell Dow Pharms., Inc.*, 509 US 579 (1993), and its progeny in evaluating the admissibility of expert testimony. See OCGA § 24-7-702(f).[4] Thus, in determining the admissibility of expert testimony,

> [t]rial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F3d 1244, 1260(III)(A) (11th Cir. 2004).

Here, the trial court excluded Alfano's testimony under the first prong of *Frazier*, ruling that he lacked the requisite experience with lawnmowers and lawnmower engines to qualify him to testify as an expert in this area. Based on the record in this case, this ruling was within the trial court's discretion. Alfano, an

---

[4] The Stubbs cite for support several cases that were decided prior to Georgia's 2005 adoption of the *Daubert* standard or the later codification of OCGA § 24-7-702 in the 2013 Evidence Code. See *Olds v. State*, 299 Ga. 65, 69(2) n.5 (786 SE2d 633) (2016) ("The new Evidence Code applies in cases tried on or after January 1, 2013."); *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 272 (658 SE2d 603) (2008) (discussing the application and adoption of the Tort Reform Act of 2005, including former OCGA § 24-9-67.1). As a result, we have not considered those cases in our analysis.

8

automobile mechanic, has no professional experience with lawnmowers or lawnmower engines. He is not an engineer and has no training or experience in designing engines. He has never published any papers or articles relating to lawnmower engines, and he has never been qualified as an expert in any case involving lawnmowers. See *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 645(2) (697 SE2d 770) (2010) (affirming the exclusion of an expert who lacked "experience that would supply the foundation supporting his methodology and conclusions" because he admittedly "had no personal experience in the design or evaluation" of the subject at issue); *Anderson v. Atlanta Gas Light Co.*, 324 Ga. App. 801, 805(1), 810-11(1)(a), 811(1)(b) (751 SE2d 589) (2013) (affirming the exclusion of an expert who had no relevant training, education, or experience and had never worked in the relevant industry).

The Stubbs argue that Alfano is an engine expert and a professional automotive mechanic who works on a wide variety of other internal combustion engines, including "lawnmower engines at points throughout his career," single-cylinder plane engines, and other items. The assertion about Alfano's experience with lawnmower engines appears to be based on portions of Alfano's deposition in which he made passing references to working on his own lawnmowers and repairing lawnmowers for other

people "once in a while." In any event, the trial court considered Alfano's experience as an automobile mechanic and the fact that he had some experience with lawnmowers in its order excluding his testimony and did not abuse its discretion in finding this experience insufficient. See id. at 811(1)(b) (affirming the exclusion of an expert despite his general knowledge of, and limited direct experience in, the relevant industry). See also *Bowers v. CSX Transp. Inc.*, 369 Ga. App. 875, 883(b) (894 SE2d 690) (2023) ("[W]hen we apply our deferential standard of review and give the trial court the 'leeway' we must in its role as gatekeeper, we cannot say the trial court abused its discretion, even if we might have reached a different decision."); *United States v. Pon*, 963 F3d 1207, 1219(III)(A) (11th Cir. 2020) ("The deference [owed] trial courts on evidentiary rulings is especially pronounced in the *Daubert* context, where the abuse of discretion standard places a 'heavy thumb' — 'really a thumb and a finger or two' — 'on the [trial] court's side of the scale.'").

2. The Stubbs also argue that the trial court erred by granting Home Depot's motion for summary judgment.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to

the nonmoving party, warrant judgment as a matter of law. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. Our review of the grant of summary judgment is de novo, and we construe the evidence and all inferences therefrom in favor of the nonmoving party.

*Foothills Pharms., Inc. v. Powers*, 313 Ga. App. 630, 630-31 (722 SE2d 331) (2012) (punctuation omitted).

Rather than addressing the elements of any of the Stubbs's specific claims against Home Depot, the trial court's order recites some facts about the case before concluding that summary judgment was proper on the basis that

[i]t is undisputed that Home Depot is merely a seller of this mower. Home Depot did not design, test, manufacture, or package the subject mower nor did they have any involvement in drafting the manuals, warning, or labels. There is no evidence that Home Depot knew or should have known of any defect in the mower or that any risk of the injury alleged by Plaintiffs was foreseeable to Home Depot.

11

The trial court also found that the Stubbs failed to present "evidence that Home Depot made any false representation to [the p]laintiffs, nor that Home Depot knew of any alleged defect in the mower that proximately caused [the p]laintiffs' injur[ies]."

(a) As an initial matter, the Stubbs have not stated a claim of product liability against Home Depot, and the trial court's order fails to fully address each of the claims she articulated against Home Depot. Nevertheless, we agree with the ultimate conclusion that the motion for summary judgment was proper. *Ga.-Pac., LLC v. Fields*, 293 Ga. 499, 504(2) (748 SE2d 407) (2013) (explaining the proper application of the "right for any reason" rule to affirm a grant of summary judgment).

(b) *Implied Warranty of Merchantability*.

In Georgia, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This warranty protects consumers from defects or conditions existing at the time of sale. Thus, proof that the [lawnmower] was defective when sold is an essential element of [Stubbs's] claim.

*Dildine v. Town & Country Truck Sales, Inc.*, 259 Ga. App. 732, 734(1) (577 SE2d 882) (2003). There is no question that Home Depot is a merchant of lawnmowers, and therefore, the Stubbs were protected at the time of the purchase by the implied warranty of merchantability for existing defects. See id. The Stubbs contend that the XTX675 engine is defective based on the fact that Toro and Home Depot advertise that no oil change is required to be performed despite the fact that it is an internal combustion engine, which requires routine oil changes and decarbonization to avoid unintended ignition events. Moreover, the Stubb contends that Home Depot should have been aware of this existing defect because it services and repairs the XTX675 engine.

Even viewed in the light most favorable to the Stubbs, this argument fails because the implied warranty of marketability does not "provide a warranty of continuing serviceability." *Jones v. Marcus*, 217 Ga. App. 372, 373(1) (457 SE2d 271) (1995). Here, Victoria and James deposed that they used the lawnmower for its intended purpose every two or three weeks without any related issues for approximately two years until the incident in July 2020. "[T]his fact inherently negates [the Stubbs's] claim that the [Lawnmower] was unmerchantable at the time

of purchase, since it clearly was capable of being [used for] the ordinary purpose for which [lawnmowers] are used." *Soto v. CarMax Auto Superstores, Inc.*, 271 Ga. App. 813, 815(1)(b) (611 SE2d 108) (2005).

(b) *Negligent Misrepresentation*. "Under Georgia law, the essential elements of the tort of negligent misrepresentation are: (1) the defendants' negligent supply of false information to foreseeable persons, which included the plaintiff; (2) the plaintiff's reasonable reliance upon that false information; and (3) injury proximately resulting from such reliance." *Powers*, 313 Ga. App. at 631(1). In this case, the alleged misrepresentation was that the XTX675 engine did not require an oil change over the life of the lawnmower. "Although [the Stubbs], as the nonmovant[s], [are] entitled to all reasonable inferences drawn from the evidence, 'an inference cannot be based upon evidence which is too uncertain o r speculative or which raises merely a conjecture or possibility.'" Id. In this case, even assuming that the Stubbs are correct that internal combustion engines, including the XTX675, need regular oil changes in order to avoid the likelihood of an unintended ignition event, they have failed to present sufficient evidence to constitute a jury question as to whether this was the cause of the incident that resulted in her injury. See id. at 631–32(1).

(c) *Fraud*. To establish fraudulent misrepresentation, the Stubbs must show "(1) a false representation by the defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damage to plaintiff." *Tavistock Freebirds LLC v. Coca-Cola Co.*, 366 Ga. App. 443, 445(1)(a) (883 SE2d 388) (2023) (punctuation omitted). "A fraud claim can also be supported under Georgia law, even when the party does not know his statement is false if the false statement was recklessly made by the defendant." *Lester v. Bird*, 200 Ga. App. 335, 338(1) (408 SE2d 147) (1991). The trial court found that the Stubbs could not show that Home Depot made a false representation. Putting aside the issue of whether an internal combustion engine can be properly maintained without an engine oil change for the expected life of a lawnmower, this claim is without merit.

The Stubbs cannot show that Home Depot intended "to induce [the Stubbs] to act or refrain from acting in reliance on the representations." See *Tavistock Freebirds*, 366 Ga. App. at 445(1)(a). It was of no moment to Home Depot whether the Stubbs purchased the lawnmower with the XTX675 motor or another model from its inventory, and the record lacks evidence that the Stubbs were deciding between this model or foregoing the purchase altogether. See *Mannato v. SunTrust Banks, Inc.*, 308

Ga. App. 691, 691 (708 SE2d 611) (2011) (a plaintiff can "plead himself out of court by revealing a state of facts which affirmatively shows that there is no liability on the defendant") (quotation marks omitted).

(d) *Fair Business Practices Act.* An FBPA claim "requires a showing that a defendant committed 'a volitional act constituting an unfair or deceptive act or practice conjoined with culpable knowledge of the nature … of the act.'" *Paulk v. Thomasville Ford Lincoln Mercury, Inc.*, 317 Ga. App. 780, 783(2) (732 SE2d 297) (2012). Like the fraud claim, the Stubbs's FBPA claim fails. See id.

(e) *Derivative claims.* Based on our holdings above that the grant of summary judgment was proper as to the Stubbs's substantive claims against Home Depot, the trial court properly granted summary judgment as to James's derivative claim for loss of consortium, see *Holloway v. Northside Hosp.*, 230 Ga. App. 371, 372 (496 SE2d 510) (1998), and the claims for attorney fees under OCGA § 13-6-11 and punitive damages, see *ABH Corp. v. Montgomery*, 356 Ga. App. 703, 706(c) (849 SE2d 30) (2020).

*Judgment affirmed. Davis, J., and Senior Judge C. Andrew Fuller concur.*